May it please the court, good morning. Dana Duncan on behalf of Bonnie Dudley. We present two issues in today's case, the first being the consistency of the residual functional capacity and hypothetical question in its relationship with the ALJ's step 3 findings that Ms. Dudley had moderate limitations and concentration persistence in pace. The first issue has been briefed repeatedly before this court and this court has entered multiple decisions on the issue, several just within the past few months. The commissioner has submitted a supplemental statement of authority asserting that this court is somehow attempting to create some bright-line rule or some per se requirement that all moderate limitations and concentration persistence in pace should be a basis for a remand. That's not the case. The end of the law comes down to the same issue repeatedly and that seems to be missing from the commissioners arguments and from the ALJ's action which is that the ALJ must exercise some level of effectiveness in issuing the decision. There has to be rationale provided. The issue is not some draconian requirement being imposed on ALJ's by this court. This court has said repeatedly that there are many roads leading to Rome. The ALJ has to provide the map to show how she got to Rome. Call it tracing the path of reasoning, call it building a logical base. It's simply a requirement that the ALJ articulate his reasoning so deference can be given to his decision. What additional limitations do you think are missing from the hypothetical that the ALJ posed? Well in this particular case, in order to take into account we have in this particular case your honor simple routine tasks. It doesn't deal with concentration persistence in pace. Simple decision-making, minor changes in the work setting, exercises simple judgment, no direct public service, no crowded or hectic environments, brief superficial contact with co-workers and supervisors, no tandem tasks. The only one in this is average production pace but not above average or variable pace. The problem is it's not necessarily the lack of a restriction but we have no idea where this came from or how it relates to this claimant. The problem that we continually have is the judges should do, I mean there's three things. It's say how you got the limitation, say how it applies to the claimant, and then what evidence supports the first two points. So you're not saying you think additional limitations should have been included in the hypothetical. You're saying that those that were put in there are not necessarily linked with the medical evidence? Correct. It's not in my position right now to say what additional should or shouldn't be because then I'd be plain doctor. The record shows in this particular case the judge's decision on page 28 of the record. The examiner assessed the claimant with major depressive disorder, generalized anxiety disorder, PTSD, ADHD. I have assigned the claimant functional limitations to accommodate these conditions. That's it. Then he goes on to say later that he noted Dr. Asma indicated that while she prefers to stay at home she maintains or is capable of simple tasks. So in other words he's saying that this whole issue of her condition is limited basically to simple tasks. The opinion of the state agency medical consultants are given weight as they are supported by the overall objective evidence and the claimant's treatment records. I afford them considerable benefit of the doubt and include additional limitations reflecting evidence submitted after these opinions. Again it doesn't explain how he arrived at these. If you look at the transcript itself, your honors, I had the privilege of actually trying the case and it was clearly laid out in the transcript itself that I asked a hypothetical question that just asked if you assume that 5% of the time she is absent from work or that she has this tardy, 5% of the time she is distracted and unable to maintain concentration and attention for an extended period, 5% of the time she is not able to maintain pace. The vocational expert testified that even those minimal amounts of impairments would collectively be sufficient to prevent her from having gainful employment at step five. And so that's the issue here is we have not really done an adequate, or the judge in this particular case did not do an adequate job of assessing all of the limitations. There seems to be a real bent on maintaining the whole concept that somehow or another, moderate limitations and concentration, persistence and pace is adequately accommodated by a limitation of simple, routine and repetitive. And this court has said repeatedly, other courts have said repeatedly, and what has ended up happening is over the last 10 years that this court has been saying this, is that ALJs are now starting to at least try to The problem though is that those additional limitations tend to be limitations that sound good, but really have no impact. The 10% off task limitation that is thrown in. You ask any vocational expert, 10% off task is automatically not a problem for most vocational experts. So it's tailoring questions with a preconceived notion of what's involved. It's important to remember that when we're talking about these cases, and again, this is not a situation where I am at all claiming that Ms. Dudley's mental impairments alone would be sufficient for her to be found disabled. The standard of proof, or the mechanism Congress created is that at step three, you have to establish that you meet a listing, and as a matter of law, you are disabled. If not, then you take what those limitations are that you found that were not marked and sufficient to meet the listing, and you convert them into a residual functional capacity. A vocational expert is given a hypothetical question to determine there was impact, and then determine what exactly the It's a collective. It's kind of like putting together a jigsaw puzzle, and making or finding what the result will ultimately be. I mean, a moderate finding, when you're talking about this, can make all the difference in the world. A vocational expert, in this case, even pointed out one day absent versus two days absent, is enough to change the circumstances from not disabled to disabled, because there would be no work available with two absences on a regular basis per month. The same thing can be said, the very few cases, or very few, there are only, for example, three occupations in the Dictionary of Occupational Titles that are light, or excuse me, sedentary and unskilled that have occasional handling and fingering. So by adding those limitations, and then having a limitation also that involves no public contact, those jobs could even be eliminated. So it's a matter of, you have to lay out the roadmap. And in this particular case... Mr. Duncan, I think I understand the issue about the gap between talking about problems with concentration, persistence, and pace, and just including more specific limitations in the hypothetical. And there may not be complete congruence here, but are there any specifics you can tell us about in this case that suggest that this hypothetical question was not a serious situation? Well, she testified at hearing that she had problems with anxiety attacks. And when she had an anxiety attack or a panic attack, she was debilitated for a period of time. So an inclusion for unscheduled breaks for 30 minutes once a week, because she's likely or is having a panic attack, would be a kind of limitation. And I think I even included such a limitation in the hypothetical question to the vocational expert. Ultimately, it's difficult for me to say what is and is not the specific. Again, the focus should be on the judge articulating specifically why. Because if we start getting into too much of, well, these are the limitations that should have applied, then we are then... Again, I would feel like I'm playing doctor. The analogy I always tried to use and explain to my son who works with me is, I used to be a history tutor, and it doesn't matter what you say as long as you say it with enough authority and conviction and enough support. And that's the problem with these cases is that they're doing them in a quick hamstring fashion without really dealing with the specific cases and the specific limitations of a claimant. Your time has expired. Yes. Your honors, may it please the court, Javid Dilley on behalf of the commissioner. Opposing counsel, at the risk of sounding flippant, almost gives up the game when he says no doctor in the record opined greater limitations than the ALJ found. The ALJ here reasonably relied on the opinions of record, medical evidence of record, about how Ms. Dudley's impairments limited her ability to work, her mental ability to work. Only mental issues are at issue in this case. The ALJ included in the RFC finding all the specific limitations opined by any doctor, and though she had access to contemporaneous medical care, though she had access to counsel, the counsel who represents her here in this court, she didn't identify any additional limitations. No doctor opined specific limitations in excess of what the ALJ put in the RFC. How can she now show harm in this court? It's not clear. Now, opposing counsel asks the court to focus on articulation, and so I'll start there. What he wants is perfect explicit articulation. The court can tell from the four corners of the document, and the inferences that can be drawn from that document, what the ALJ considered when reaching the RFC finding, and if it can do so, then it must focus on whether those findings are supported by substantial evidence, which the Supreme Court recently in B.S. Act reiterated, is a low bar. Here, the ALJ, the court knows that the ALJ's RFC captured the bottom line limitations opined by the state agency doctors. If it looks at the narrative opinions provided by those doctors, it captured all of those limitations. That the ALJ, though she did not give explicit weight to Dr. King's report, or I'm sorry, he did not give explicit weight to Dr. King's report, specifically said that he added limitations to the RFC to capture the limitations opined by Dr. King's report. What's the impact of the ALJ not assigning a specific weight to Dr. King's report? I think that at worst that error is harmless, Your Honor, because the ALJ said that he intended to capture those limitations, and then the court can see that several limitations were added to the RFC in excess of what the state agency doctors opined. And on their face, all of those limitations go to work stress, which is the only area really in which Dr. King opined any significant limitation, right? Unlike the state agency doctors, Dr. King thought her concentration problems were mild, thought her social problems were mild, and thought that she had significant job stress limitations. And the ALJ added limitations to the RFC, and I can detail them, I have the RFC here, added limitations in addition to simple routine repetitive tasks, no more than simple decision-making, no more than occasional and minor changes in the work setting, the exercise of only simple judgment, unable to work in crowded or hectic environments, and then took account of the state agency doctor's opinions that she could not work more than briefly or superficially with the public, co-workers, or supervisors, and that she was limited to simple routine repetitive tasks. All of that is in the ALJ's decision. Of course, as we say in our brief, we would have preferred, as the court would prefer, a more explicit articulation of the decision, right? A more sort of strongly worded, more fulsome decision, right? But if the court can tell from the four corners of the document what the ALJ's reasoning was, then the real question is just, is that reasoning supported by substantial evidence? With respect to the secondary question, which is a really important question for both opposing counsel and my office in this court, is can a limitation to simple routine repetitive tasks, first of all, just can it accommodate a finding of moderate CPP, of moderate concentration, persistence, or pace limitations? And the answer should absolutely be yes. So the court has expressed concern that, in the past, that such a finding should not be used. It has used different language. So in O'Connor-Spinner, which was a case, I think, issued in 2010, the court said, it used sort of more tempered language, it said that usually a limitation to simple routine repetitive tasks will not accommodate a finding of moderate limitations in concentration, persistence, or pace. Later, I think about three or four years later, in Varga, the court, I think, a little bit irritated at the specific facts of Varga, because the if you look at Varga, we're pretty bad, said, we have repeatedly stated that limitations in concentration, persistence, or pace, moderate limitations in concentration, persistence, and pace, cannot be accommodated by a limitation to simple routine repetitive tasks. O'Connor-Spinner has it more right. So O'Connor-Spinner cited SSR 8515 for the proposition that the skill level of the position is not necessarily related to the difficulty an individual will face in meeting the demands of the job. The work necessarily there is really significant, because the SSR also says, and O'Connor-Spinner did not quote, that it's a fact specific inquiry, and that the losses of intellectual or emotional capacities are more significant, the more complex work is. So the less complex work is, the easier it is to sustain. The court should take the admonition of the security cases are fact specific cases. What the court should be looking at is, on the facts of this case, was it reasonable for the ALJ to think that a limitation to simple routine repetitive tasks accommodated a finding of moderate, the step three finding of moderate concentration, persistence, or pace limitations? And the answer is absolutely yes. So to the extent that the court in the past has expressed concern, it should look at, for example, pages 87 and 88 of the record, where Dr. Kang gave the first state agency opinion, said the claimant may have some difficulty in focusing on detailed tasks, but she can maintain concentration and persistence to complete work days and work weeks in performance of simple repetitive tasks. It's clear that the doctor there is specifically saying the claimant's limitations in both can be addressed entirely by a limitation in work complexity. A limitation to simple tasks can accommodate her concentration limitations. The doctor is opining that. And I don't think the court wants to be in a position to say the doctor can't say that. The doctor can't just mean that by the limitations that he's assessing in concentration, persistence, or pace. So would it be reasonable, Mr. Adili, to ask the ALJ, or to insist, I guess, that the ALJ, when making that move from the doctor's focus on moderate limitations on concentration, persistence, and pace, needs to address whether that is sufficient. Sometimes it is, sometimes it isn't. I don't know whether it's O'Connor-Spinner or Varga that is closest to some perfect answer to this question, but it looks like there is some disjunction, at least in some cases. So why not expect the ALJ to address that specifically? I think that puts too high an articulation bar on the ALJ, Your Honor. The court has acknowledged the sorts of limitations the ALJs face in terms of time, right, to spend with these cases. And I know that the court can't, you know, overlook remandable errors, reversible errors, in the face of that, right, like take that into account when deciding whether to remand cases. But the Supreme Court's jurisprudence, long-standing jurisprudence, right, 50-plus year jurisprudence, and this court's own jurisprudence, suggests that the court should take a commonsensical approach. And so the court members have to decide, right, when we look, when you look at the four corners of the document, what do the four corners of the document and the natural inferences that flow from them tell you about what the ALJ thought about the underlying decision, and then must decide whether substantial evidence supports that decision. We think in this case, the ALJ said enough to apprise the court of what he thought. The last thing I'd like to address is recent jurisprudence regarding the Section 1 checklist boxes. One thing that I would ask the court members to do is to read POM Section 24510.060.B2A. In that, you're going to have to say that in a slow way. I'm sorry. POMs 24510.060, and then subsection B2A. What that POM section says, and the court acknowledged it in an unpublished order in Capman, is that the form, which is devised by the agency, the doctors and the ALJs are specifically told Section 1 is not part of the RFC therapy. Only Section 3 is. The narrative opinion, the bottom line opinion. And the court should be leery. It's Section 1, it's the checklist. This is the checklist. I see my time is about to expire, but I'm hoping to conclude. I'll give you a little more time to go ahead. I appreciate it. What the court should take from that is that it should be leery of finding inconsistencies between the two. Because Section 1, and if you look at the POM section, it says this is to help the doctors marshal their thoughts. But that every specific limitation they think should be included in the bottom line RFC should be put in the narrative opinion. Is it reasonable to fault the ALJs for relying on the bottom line narrative opinion? Or to fault the doctors who must know that the expectation from the ALJ will be that all of the limitations will be in the bottom line narrative opinion. So recent cases found inconsistencies between the two. Here we don't think there are inconsistencies. We think the bottom line narrative opinions completely captured the checkbox limitations. But the court should also just take a look at that POMs and assess whether it's reasonable or whether it should be leery of finding discrepancies between those two. I thank you for your time. I want to ask you one more question. Certainly. Is there a document that the vocational experts use to indicate, for example, they said that she could work as an office helper or a mailing clerk. My recollection in prior cases is that there's something that indicates what jobs are available and what numbers. So they employ the job descriptions identified in the dictionary of occupational titles. But then what they do is they use more recent materials and crosswalk those numbers to determine the job numbers. So the job description that is employed is the job description identified as identified and described in the dictionary of occupational titles. Are those government documents? It is a publication by the Department of Labor. Department of Labor. So it's a government document. Yes. Thank you. Thank you. You can have, I don't know how many, you have another two minutes. All right. Thank you. With all due respect to Commissioner, the whole issue of the POMs is a dead issue. Social Security revised their own regulations three years ago and the Section 1 findings are the consistent or what they're supposed to look at when they're evaluating the listings. So you can look at 12.00E sub 3 of the 20 CFR chapter 404 sub part P appendix 2, or excuse me, appendix 1. And you'll see that all of the Section 1 things that are on the chart are now required to be evaluated specifically. And even the case that the Commissioner repeatedly cites, Chapman, says basically, which is also what Vargas says, that if you're going to do a narrative, the narrative has to reflect the checkboxes above, which is what makes only sense. If you're going to make a finding, you then don't draw a conclusion that ignores your findings. And that's the biggest problem with this. As far as briefly, Dr. King, she found moderate to marked limitations. So at that point in time, when she says they're moderate to mark, there are times when she is unable to perform work involving stress. And there are times that she mentioned that she is going to have difficulty with concentration and persistence because she gets distracted easily. And again, the narrative talks about concentration and persistence, but says nothing about pace, which is even a further issue in this case. So my time has expired. Thank you. Thank you, counsel. Thanks to both counsel. Case is taken under advisement.